## Paper Products Company v. Pittsburgh, Appellant.

88

Argued September 30, 1957.   Before JONES, C. J.,
BELL, CHIDSEY, ARNOLD, JONES and COHEN, JJ.

*J. Frank McKenna, Jr.,* City Solicitor, for City of Pittsburgh, Appellant.

*Oscar G. Peterson,* Assistant Solicitor, with him *Mortimer B. Lesher,* Solicitor, for School District of Pittsburgh, appellant.

*Kim Darragh,* for appellee.

*E. B. Strassburger,* with him *E. B. Strassburger, Jr.,* for intervenor, appellee.

OPINION BY MR. JUSTICE BELL, January 6, 1958:

Paper Products Company, Inc. was a dealer or vendor of goods, wares and merchandise. The question involved is whether Paper Products Company was taxable as a "wholesale dealer or vendor" or as a "retail dealer or vendor" in the following transactions—as those terms are used in the Mercantile License Tax Act of June 20, 1947, P. L. 745, §1, 24 PS §582.1, et. seq., and in Ordinance 488 of 1947 of the City of Pittsburgh (enacted under authority of the Act of June 25, 1947, P. L. 1145, 53 PS §2015.1-2015.8). The provisions of the statute and of the ordinance are, for present purposes, identical.

The Mercantile License Tax Act, supra, imposed a Mercantile License Tax in School Districts of the first class. Section 1 of said Act provides, inter alia, as follows:

"(2) 'Wholesale dealer' or 'wholesale vendor' shall mean any person who sells *to dealers in, or vendors of, goods, wares and merchandise\** and to no other persons.

"(3) 'Retail dealer' or 'retail vendor' shall mean any person who is a dealer in, or vendor of, goods, wares and merchandise who is not a wholesale dealer or vendor."

Section 4, sub-section (3), clearly indicates and the parties agree that a person may be engaged in some transactions as a wholesale vendor or dealer and in other transactions as a retail vendor or dealer in goods. wares and merchandise, the tax on wholesale transactions being "at the rate of one-half ($\frac{1}{2}$) mill on each dollar of the volume of the annual gross wholesale business transacted by him, and one (1) mill on each dollar of the volume of the annual gross retail business transacted by him."

The Act, considered as a whole, imposes a mercantile license tax upon a dealer or vendor of goods, wares and merchandise (a) at the wholesale rate of $\frac{1}{2}$ mill upon the gross sales made by him to dealers or vendors of goods, wares and merchandise which are purchased by the latter for the purpose of re-sale, and (b) at the retail rate of 1 mill upon all gross sales made by him, unless they were made in his capacity as a wholesale dealer or vendor. *Hughes v. Pittsburgh,* 379 Pa. 145, 148, 108 A. 2d 698; *Brown & Zortman Machinery Company v. Pittsburgh,* 375 Pa. 250, 255, 100 A. 2d 98.

In construing the aforesaid Mercantile License Tax Act this Court in *Brown & Zortman Machinery Co. v. Pittsburgh,* 375 Pa., supra,—where the question involved was whether the taxpayer was a broker or a

---

\* Italics throughout, ours.

dealer so far as the mercantile license tax was concerned—speaking through Mr. Justice MUSMANNO said (page 255):

". . . A dealer is one who buys something in order to sell it. (Norris Bros. v. Commonwealth, 27 Pa. 494.)

"Bouvier (Bouvier's Law Dictionary, 3rd Rev. Vol. 1, p. 775) defines a dealer as follows: 'A dealer . . . is not one who buys to keep, or makes to sell, but one who buys to sell again.' [See to the same effect] Com. v. Campbell, 33 Pa. 380."

In *Hughes v. Pittsburgh*, 379 Pa., supra, this Court decided that a dealer or vendor who sold goods in large quantities to local municipal authorities, the general state authority, public schools, private schools, hospitals, charitable institutions and churches, was subject, as to these sales, to the retail sales tax, in view of the language of the ordinance. The Court said (page 148): "The test of a wholesale dealer in that case [Brown & Zortman Mach. Co. v. Pittsburgh, 375 Pa., supra] was held to be whether or not the customer buys for the purpose of reselling. . . . None of the institutions or authorities which purchased the merchandise were dealers in, or vendors of, goods, wares or merchandise. In the words of the ordinance any person [vendor or dealer] who does not sell to dealers in or vendors of goods, wares and merchandise is a retail dealer or vendor."

Paper Products Company is engaged as a dealer or vendor in various types of containers and paper supplies and is subject to the above mentioned taxes. The taxpayer filed statutorily required annual reports and accordingly paid taxes due thereon. In 1953 the taxing authorities audited the records of the appellee and assessed taxes for the years 1948 to 1953, inclusive, on the basis that all sales reported by the taxpayer as wholesale transactions were retail sales under the Act

and Ordinance. The additional taxes thus assessed were paid by the appellee under protest. To simplify the case, it will be necessary to segregate the sales of the Paper Products Company, Inc., into four categories.

The first category is comprised of gross sales of various types of paper products sold by the taxpayer to dealers or vendors who in turn sell these products in the same form in which they were purchased from Paper Products Company. These sales comprise approximately 37% of the taxpayer's total sales and are unquestionably wholesale sales.

The second category is comprised of gross sales to various institutions such as hospitals, municipalities and the like. These are not vendors or dealers, in the ordinary meaning of those words or within the meaning and intent of the statute. We agree with the taxing authorities (and the appellee concedes) that as to these sales (which amount to approximately 24% of the taxpayer's total sales), Paper Products Company was a retailer: *Hughes v. Pittsburgh,* 379 Pa., supra.

The third category of gross sales (amounting to approximately 10% of the taxpayer's total sales) is comprised of goods or merchandise such as towels, toilet paper, napkins, cups and the like, which are made to dealers or vendors not for the purpose of resale, but for use by them (their employees or customers) upon the premises. These goods are not bought for resale, nor are they used in connection with products sold by the dealer or vendor. We agree with the taxing authorities that these sales are "retail sales": Cf. *Hughes v. Pittsburgh,* 379 Pa., supra.

The fourth category of transactions (comprising approximately 30% of the gross sales of the taxpayer) consist of containers, wrapping paper and packaging materials which are sold by taxpayer to dealers or ven-

dors, who in turn use the same in direct connection with the sale of their products. These containers, etc., are delivered to the ultimate consumer by the dealers or vendors, i.e., the purchasers from the original seller, without a specific charge for them. They are used by said dealers or vendors to enclose or wrap goods, wares and merchandise, which are sold by said dealers or vendors. The trial Court found that these transactions or sales by the taxpayer were "retail sales"; the Superior Court reversed and found these transactions or sales to be "wholesale sales". We agree with the Superior Court.

The taxing authorities contend that these goods and merchandise should be taxed at the retail rate because they are not resold by the dealers and vendors to whom the taxpayer sold them, but are given as a free service or a convenience to the ultimate consumer. The taxpayer, on the other hand, contends that while no specific charge is made for these containers, wrapping paper and packaging material, (1) they in reality are sold because the dealer in fixing a price for the goods which are contained or wrapped almost invariably includes within his mark-up the cost of the containers, etc.; and (2) it has become an accepted custom of the trade and an almost indispensable necessity for the consummation of a sale. In the practical world of today a purchaser does not go around, as the taxing authorities contend, with a paper bag, a milk pail or bucket or other container in his hand to carry home goods which he buys, since he knows the goods purchased will be delivered to him wrapped or nicely packaged. The ultimate purchaser likewise knows that the dealer is not giving these wrappings, etc. free. The taxing authorities also contend that containers, wrapping paper and the like are a part of a merchant's overhead, the same as light, heat and showcase. We dis-

agree. The ultimate consumer does not acquire title or possession to the light, heat or showcases in a merchant's store, whereas he does acquire both title and possession to the containers, wrapping paper and packaging material which enclose the product he purchases. Furthermore, if there were any reasonable doubt, tax statutes must be strictly construed in favor of the taxpayer and most strongly against the taxing authorities: *Panther Valley Television Co. v. Summit Hill Borough,* 376 Pa. 375, 102 A. 2d 699; *Pittsburgh Milk Co. v. Pittsburgh,* 360 Pa. 360, 62 A. 2d 49; *Allentown Mercantile Tax Case,* 370 Pa. 161, 87 A. 2d 480.

We are also convinced that if the Legislature intended that two taxes should be collected on the sale of one item by two dealers, it was their intention that one of the taxes would be at the wholesale rate and the other tax at the retail rate.

We agree with the able opinion of Judge WOODSIDE, speaking for the Superior Court, that the items included in the fourth category are subject to tax at the wholesale rate.

We have considered all the other contentions made by the parties but deem further discussion unnecessary.

The judgment of the Superior Court is affirmed.